IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **SUMMIT SUN INVESTMENTS, LLC**<br>c/o Naomi Ewald<br>512 Dayton St.<br>Yellow Springs, Ohio 45387<br><br>*On behalf of itself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**MONTGOMERY COUNTY BOARD OF COMMISSIONERS**<br>451 West Third Street, 11th Floor<br>Dayton, Ohio 45422 | : : : : : : : : : : : : : : : : : : | CASE NO.<br><br>Judge<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Serve also:
**Mat Heck, Jr., Prosecuting Attorney**
**Montgomery Prosecutor's Office**
**301 West Third Street, 5th Floor**
**Dayton, Ohio 45422**

                            **Defendant.**

Plaintiff Summit Sun Investments, LLC (Summit Sun or Plaintiff) brings this action against the Montgomery County Board of Commissioners on behalf of itself and all those similarly situated.

## INTRODUCTION

1.    Plaintiff is one of hundreds or thousands of property purchasers who purchased with free and clear title properties tied into the water and sewage lines owned and operated by Montgomery County Environmental Services, a Montgomery County department ("Montgomery" or "Defendant").

2. Unbeknownst to Plaintiff or members of the Class, Montgomery has adopted an unlawful policy of refusing to provide water and/or sewer access to new owners of properties if the previous owner or resident had a balance owed on their account after leaving the property.

3. Instead of following any of the statutorily permitted paths to recover the balance owed, Montgomery's policy is to use its position as a monopoly to hold the property hostage until the new owner caves and pays off the debt owed by the previous resident.

4. Montgomery offers no way to challenge this policy. Indeed, no new owner would leave a recently acquired property to sit without water or sewer access for the months it might take to work through the county bureaucracy, even if there were a process.

5. Plaintiff did what every other member of the Class did and will be forced to do absent judicial intervention: pay off the previous owner's debt. In this case, Plaintiff paid Montgomery $5,750.65, money it did not owe, money it had no obligation to pay, and money Montgomery had no right to.

6. Montgomery continues to deceive and coerce new property owners into paying debts they do not owe, which were not listed or found on any title or court search.

7. Plaintiff and the class members suffered damages from Montgomery's unlawful and monopolistic action and will continue to suffer in the future.

**JURISDICTION**

8. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this being a civil action arising under the Constitution and the laws of the United Sates. Jurisdiction

is also conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4), 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988, this being an action for declaratory judgment and equitable relief authorized by law to redress deprivations of rights under color of law, privileges and immunities secured by the Constitution of the United States.

9. Jurisdiction over state law claims is conferred by 28 U.S.C. § 1367 as authoritatively construed in *Chicago v. Illinois College of Surgeons*, 522 U.S. 156 (1997).

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant maintains one or more offices in this judicial district. Venue is also proper because a substantial part of the events giving rise to the claims took place in this judicial district.

11. At all times pertinent to this Complaint, and in taking all of the actions described in this Complaint, Defendant, its officers, agents, and employees, acted under color of law and were affecting, and will affect, the custom, policy, and laws of a state.

## THE PARTIES

12. Plaintiff is an Ohio LLC, with a statutory agent residing in Yellow Springs, Ohio.

13. Defendant Montgomery County Board of Commissioners is the entity that must be sued related to the actions of Montgomery County Environmental Services.

## FACTS

14. Summit Sun Investments, LLC was set up as an investment LLC with the intent to purchase, remodel, and resell properties, focusing on the Dayton/Yellow Springs area in Ohio.

15. Plaintiff placed a successful bid on a property subject to foreclosure located at 5108 Far Hills Avenue, Dayton, Ohio 45249, on January 24, 2023 (the Property).

16. Plaintiff paid for an owner's policy of title insurance related to the Property.

17. No title issues were discovered on the Property, and no delinquent utility assessments had been filed on the record.

18. As part of Plaintiff's preparation to take possession of the Property, Plaintiff called the Montgomery County Water Department ("Water Department" or "Montgomery") to switch the water service to Plaintiff's name.

19. The Water Department informed Plaintiff that the last owner had a balance on her account, that the water had been turned off, and that the water would not be turned on until Plaintiff paid the past owner's debt.

20. Attached as Exhibit A is the "Final Bill" for water services that Montgomery insisted Plaintiff pay. It includes the customer's name (not Plaintiff), late fees accrued by the previous customer, a "shut off trip fee," a "trip charge," and over $5,000 in Sewer and Water charges that Plaintiff had not accrued.

21. Over the next several weeks, Plaintiff and Plaintiff's counsel spoke repeatedly with Defendant's agents, who uniformly agreed that the Montgomery County Rules and Regulations require prior unpaid balances on a property be paid before service is even *transferred*. Thus, Plaintiff could not even become a customer until it paid off the previous property owner's debt.

22. Montgomery offered no process or method to challenge this amount owed.

23. Plaintiff eventually was forced to pay $5,750.65 to settle the previous property owner's debt and take meaningful possession of the Property.

24. Plaintiff may purchase another property in Montgomery County.

### *Montgomery's Rules and Regulations*

25. The Montgomery County Environmental Services Rules and Regulations ("Rules") available to the public were effective on May 17, 2016. Exhibit B.

26. These Rules are an unconstitutional and inequitable policy.

27. Alternatively, at a minimum, these Rules are an unconstitutional custom.

28. The Rules note that the Montgomery County Commission has the authority to adopt and promulgate the Rules under Ohio Revised Code Chapters 6103 and 6117. Rule 2.1

29. Rule 3.1.3 states unequivocally for new customers that "Prior unpaid balances on the parcel will be due before service can be transferred."

30. Rule 3.2.1 states that "Property owners shall be held responsible for services provided to their premises…. The current property owner will be held responsible for all delinquent charges, even if they were not the owner of the property when the charges were accrued."

31. Rule 3.5 states that "Payments are expected to be received by the due date. If payment is received after the due date, the account is subject to late charges equal to ten percent (10%) of the bill."

32. Rule 3.6.1 (Delinquent Accounts) states that "If a bill remains unpaid, the service shall be subject to termination and additional fees may be applied. Service shall not be restored until all delinquencies and charges associated with the parcel are paid.

33. Rule 3.6.2 provides for reactivation of a delinquent account "within five (5) business days after payment has been received."

34. Rule 3.6.3 makes it clear the purpose of the shutoff procedures: "The shut off process is used for MCES *to collect a debt*, not for property owners' use in evicting tenants." (Emphasis added). Rule 3.9.2 iterates this statement: "MCES will not terminate service for the purpose of evicting a tenant."

35. MCES "reserves the right to use all legal means to collect debt." Rule 3.6.4. MCES did not reserve the right to use all illegal means to collect debt.

36. When an account is transferred or service is terminated, "A final billing statement will occur." Rule 3.9.1. "The final bill will be based on a final meter reading performed by MCES…Should it not be possible to obtain a final reading, a final billing will be estimated."

### *Montgomery's Actual Authority*

37. The Ohio General Assembly gives counties in Ohio the authority to create departments of waters and sewers, so long as the county then assumes "all duties and performs all functions related to the operation of the county's sewer and water systems." R.C. 302.204.

38. Once assumed, R.C. 6103.02 provides certain enumerated powers to the county commissioners regarding the public water supply. This includes fixing reasonable rates and penalties for late payments for water "supplied to public agencies and persons," as well as rules for the establishment and use of water connections, and the "termination in accordance with reasonable procedures of water service for nonpayment of" rates. RC 6103.02(C), (F).

39. This same statute gives the board four specific remedies when rates or charges are not paid:

   a. Certify the unpaid funds to the county auditor, who will place a lien on the property;
   b. Sue, in the name of the county, the owner, tenant, or other person or public agency that is liable for the payment of the rates or charges;
   c. Terminate, "in accordance with established rules, the water service to the particular property" until the rates/penalties are paid; or
   d. Apply any security deposition to the unpaid amount, for water serviced to the particular property.

*Id.* at (G).

40. No statute allows Montgomery to collect unpaid fees and assessments from innocent third parties who did not accrue those unpaid fees and assessments.

41. All monies collected "as rates, charges, or penalties" must be paid into a separate and distinct water fund." *Id.*

### ***Montgomery is not authorized to force Plaintiff and Class Members to pay off others' debts.***

42. Nothing in RC 6301.02 suggests Montgomery can force innocent third parties to pay unpaid rates, penalties, and charges accrued by another.

43. The fact that Montgomery sees these unpaid rates, penalties, and charges as a "debt" demonstrates that Montgomery County understands that it is doing nothing more than trying to collect a debt from someone who does not owe the debt, using its monopoly on access to water and sewer.

44. It does this acting under color of law, without providing for any due process or authority to challenge the unlawful charge.

## CLASS ACTION ALLEGATIONS

45. Upon information and belief, the number of affected purchasers in Ohio numbers in the thousands.

46. Under Fed.R.Civ.P. 23(b)(2) and (b)(3), Plaintiff brings this suit on behalf of itself and a class (the "Class") defined as follows:

> All persons who, during the maximum period of time permitted by law, who may purchase or have purchased free and clear properties connected to water provided by Montgomery County Environmental Services, and have paid, are currently paying, or will pay debts or money owed by previous owners or tenants of the properties to Montgomery County Environmental Services in order to obtain full and unfettered access to their properties.

47. The class definitions exclude Defendant, its employees, agents, officers, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; and the judicial officers and their associated court staff assigned to this case from the proposed Class.

48. Under Fed.R.Civ.P. 23(b)(2) and (b)(3), Plaintiff bring this suit on behalf of itself and a subclass (the "Subclass") defined as follows:

> All persons who, during the maximum period of time permitted by law, purchased free and clear properties connected to water provided by Montgomery County Environmental Services, and have paid debts or money owed by previous owners or tenants of the properties to Montgomery County Environmental Services in order to obtain full and unfettered access to their properties.

49. The definitions of the Class and Subclass are unambiguous, and Plaintiff is a member of the Class and Subclass it seeks to represent.

50. Plaintiff reserves the right to amend or modify the Class and Subclass definitions to create greater specificity, division into additional subclasses, or limit to particular issues as this case progresses.

51. The Class and Subclass are so numerous and dispersed that joining all Class and Subclass members would be impracticable. The exact number of Class and Subclass members is unknown at this time and can only be ascertained through appropriate discovery but is assumed to number in the thousands.

52. Plaintiff's claims are typical of the Class and Subclass because Plaintiff purchased a property serviced by Montgomery County Environmental Services, and then was told after the purchase that in order to receive water to the property, it had to pay debts and/or money related to water services owed by the previous owner or tenant. Plaintiff may purchase another property in Montgomery County. Plaintiff's claims have the same essential characteristics as all other Class and Subclass members' claims and the evidence to establish the facts and claims stated herein will be the same for Plaintiff and other members of the Class and Subclass. All claims are based on the same course of conduct and similar legal theories. All Class and Subclass members, including Plaintiff, possess the same interests in pursuing the case as do Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

53. Plaintiff will fairly and adequately protect the interests of the members of the Class and Subclass and has retained counsel competent and experienced in class action litigation.

54. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole. Specifically, upon information and belief Defendant

continues to demand money it they have no legal right to and continue to refuse to provide any due process to challenge the coercive demands.

55. Common questions of law and fact exist as to Class and Subclass members' claims and predominate over questions affecting only individual Class and Subclass members. Common legal and factual questions include, but are not limited to:

 a. the nature of Defendant's representations in demanding money of new property owners;

 b. the authority of Defendant to demand money owed by another to new property owners;

 c. the lack of due process provided by Defendant to challenge their demand that new property owners pay past property owners' debts;

 d. the extent to which Montgomery takes and deprives new property owners of their property through their refusal to provide water services, and the just compensation for such taking;

 e. whether the Court should enjoin Defendant from continuing to misrepresent the law and force new property owners to pay debts owed by others;

 f. whether the issues in the case should be addressed on a class basis.

56. Resolution of each of these issues will turn upon evidence common to all Class and Subclass members.

57. Resolution of issues common to all Class and Subclass members will predominate over individual issues and a class action is a superior form of action.

58. The issues common to the Class and the Subclass and the nature of the common relief creates a cohesive class for injunctive relief.

59. Treating this case as a class action rather than attempting multiple individual actions provides a superior method for the fair and efficient adjudication of this controversy because:

   a. It will avoid a multiplicity of suits and consequent burden on the courts and Defendant;

   b. Joinder is impracticable;

   c. It will assure uniform application of the laws and a single, uniform decision across the board without sacrificing procedural fairness or bringing about other undesirable results;

   d. It will provide court oversight of the claims process, once Defendant's liability is adjudicated;

   e. It will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender; and

   f. It will permit the adjudication of relatively small claims by certain Class and Subclass members, who could not afford to individually litigate such claims against a large corporate defendant.

60. Plaintiff and the proposed Classes satisfy the requirements of Fed.R.Civ.P. 23(b)(1)(A), (b)(2), and/or ((b)(3).

61. Plaintiff is not aware of any difficulties that are likely to be encountered in managing this action that would preclude its maintenance as a class action.

**Allegations Related to Ohio's Political Subdivision Immunity Statute**

62. Defendant is a political subdivision as defined by R.C. § 2744.01(F).

63. The functions of a political subdivision are classified, for immunity purposes, as either governmental or proprietary. R.C. § 2744.02(A)(1).

64. The establishment, maintenance, and operation of a utility, including a municipal corporation water supply system are proprietary functions as defined by R.C. § 2744.01(G)(2)(c).

65. In addition, the maintenance, destruction, operation, and upkeep of a sewer system are proprietary functions as defined by R.C. § 2744.01(G)(2)(d).

66. Defendant is liable for the negligent acts of their employees in the performance of proprietary functions.

67. Defendant's operation of the water supply system and sewer system as to Plaintiff constitutes a proprietary function.

68. The acts of checking a property owner's account, setting up the provision of water and sewer services to a specific property, and providing or disconnecting water and sewer services to a specific property are part of the day-to-day operations of the water and sewer system.

69. In Ohio, a municipality or other governmental body providing water and/or sewer service has a duty to provide water and/or sewer service to property owners whose accounts are current.

70. Defendant's employees(s) act of refusing to provide water and/or sewer access to new owners of properties if the previous owner or resident had a balance owed on their account constitutes negligent performance of a proprietary function. R.C. § 2744.02(B)(2).

71. Defendant's employees(s) act of refusing to provide water and/or sewer access to new owners of properties if the previous owner or resident had a balance owed

on their account was not within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

72. Alternatively, if the act of refusing to provide water and/or sewer access to new owners of properties if the previous owner or resident had a balance owed on their account was within the discretion or judgment of the employee, such judgment or discretion was exercised with a malicious purpose, in bad faith, or in a wanton or reckless manner.

73. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1988 are exempted from the purview of Ohio's sovereign immunity statute by R.C. § 2744.09(E).

## Count I – Declaratory and Injunctive Relief

74. Plaintiff hereby incorporates paragraphs 1-61 in this Class Action Complaint as if fully rewritten and restated here.

75. Plaintiff requests this Court issue an order declaring that by engaging in the conduct described herein, Defendant has committed, and continue to commit, unlawful actions in violation of Ohio law and of the Ohio and United States' Constitutions.

76. Plaintiff can show a substantial likelihood of success on the merits of its claims.

77. Constitutional violations generally constitute irreparable harm.

78. Issuing an injunction would not cause harm to Defendant or third parties.

79. The public interest would be served by the injunction.

80. Plaintiff requests the Court enjoin Defendant from continuing to commit the unlawful acts described herein, and any other equitable relief it deems appropriate.

81. Plaintiff requests the Court issue an order requiring Defendant to comply with Ohio law in acting as a monopolistic water supplier to property owners in Montgomery County.

### Count II– 42 U.S.C. § 1983 – Violation of the Fifth and Fourteenth Amendments of the United States Constitution and Ohio Constitution Article I, Section 16 and 19.

82. Plaintiff hereby incorporates paragraphs 74-81 in this Class Action Complaint as if fully rewritten and restated here.

83. The Fourteenth Amendment to the United States Constitution holds that no State shall "deprive any person of life, liberty, or property, without due process."

84. Similarly, the Ohio Constitution Article I, Section 16 holds that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

85. The Fifth Amendment to the United States Constitution also prohibits private property from being taken without due process of law, or for public use without just compensation.

86. Similarly, the Ohio Constitution Article I, Section 19 holds that "Private property shall ever be held inviolate" and "where private property shall be taken for public use, a compensation therefor shall first be made in money…and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

87. Defendant has a monopoly in the provision of water to property in Montgomery County.

88. Defendant's refusal to allow property owners such as Plaintiff and Class and Subclass members access and use of their property until they pay off others' debts is an unlawful taking of property without just compensation in violation of the United States Constitution, Fifth Amendment, and the Ohio Constitution, Article I, Section 19.

89. By refusing to allow new property owners the ability to challenge the required payment of others' debts, Defendant is taking Plaintiff and the Class and Subclass's private property without due process, in violation of the United States Constitution, Fourteenth Amendment and the Ohio Constitution, Section 1, Article 16.

90. Defendant's conduct as described herein was undertaken—and continues to be undertaken—with the intention and/or result of preventing Plaintiff, the Class, and Subclass full possession of their private property, a right protected by the United States and Ohio Constitutions.

91. Defendant's conduct bears no real or substantial relationship to any governmental interest, and constitutes arbitrary, discriminatory, capricious, and unreasonable conduct.

92. Defendant's conduct is unconstitutional.

93. Defendant's conduct deprived and deprives Plaintiff and members of the Class and Subclass of their rights under the Ohio and United States Constitutions.

94. Defendant's conduct depriving Plaintiff and members of the Class and Subclass of their constitutional rights has all been taken under color of state law.

95. As a direct and proximate result of the actions of Defendant, Plaintiff and the Subclass have been damaged in an amount to be determined at trial.

96. Plaintiff and the members of the Subclass are entitled to money damages.

### Count III – 42 U.S.C. § 1988 – Attorneys' fees and costs

97. Plaintiff hereby incorporates paragraphs 82-96 in this Class Action Complaint as if fully rewritten and restated here.

98. Defendant has violated Plaintiff, the Class, and the Subclass's constitutional rights pursuant to 42 U.S.C. § 1983.

99. Plaintiff has accrued, and continue to accrue, attorneys' fees in order to bring this action to remedy Defendant's violations of its civil rights.

100. Plaintiff is entitled to reasonable attorneys' fees and costs incurred in bringing this litigation pursuant to 42 U.S.C. § 1988.

### Count IV – Unjust Enrichment

101. Plaintiff hereby incorporates paragraphs 1-73 in this Class Action Complaint as if fully rewritten and restated here.

102. Plaintiff and the Subclass members paid monies to Defendant.

103. Defendant continues to possess and/or use those monies received from Plaintiff and the Subclass.

104. Defendant knows or should know that it is holding and/or using those monies inequitably, and that Defendant has received a direct benefit at Plaintiff and the Subclass's expense.

105. It would not be equitable to allow Defendant to retain the monies paid by Plaintiff and the Subclass when Defendant knows that the money was unlawfully obtained through the use of Defendant's monopoly.

106. Defendant's unjust conduct was and is the proximate cause, and a substantial fact, in causing losses and damages to Plaintiff and members of the Subclass.

**Count V – Ohio Revised Code § 2307.60**

107.　Plaintiff hereby incorporates paragraphs 101-106 in this Class Action Complaint as if fully rewritten and restated here.

108.　Ohio Revised Code 2307.60 holds that anyone who is injured "in property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees…"

109.　This statute requires only that the "act" be criminal, not there be a conviction, or even a trial.

110.　"Deception" is "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.01(A).

111.　"Defraud" is to "knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

112.　"Deprive" has three definitions, and means any of the following:

(1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

(2) Dispose of property so as to make it unlikely that the owner will recover it;

(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

R.C. 2913.01(C).

113. Any person who, "with the purpose to deprive the owner of property or services" may "knowingly obtain or exert control over either the property or services in any of the following ways" is "guilty of theft":

(1) Without the consent of the owner or person authorized to give consent;

(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception;

(4) By threat;

(5) By intimidation.

R.C. 2913.02

114. Ohio law holds that a person is guilty of extortion if, they "with purpose to obtain any valuable thing or valuable benefit…Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit." R.C. 2905.11(A)(5); (B).

115. Ohio law also holds that a person is guilty of coercion if they, with the "purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice," "Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit."

116. By their conduct as described herein, Defendant has committed criminal acts.

117. By their conduct as described herein, Defendant has caused damages to Plaintiff and the Subclass and are owed compensation, including attorneys' fees and costs.

**Wherefore,** Plaintiff on behalf of itself and all others similarly situated, respectfully requests the Court:

a. Certify this case as a Class Action under Federal Rule of Civil Procedure 23 and appoint Plaintiff the class representative for the proposed Class and Subclass, and Plaintiff's counsel as Class Counsel;

b. Find in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

c. Award damages to Plaintiff and Class Members, including compensatory, consequential, exemplary, punitive, and statutory damages;

d. Declare that Defendant's conduct was and is inequitable, violates the statutes referenced herein, as well as the Ohio and United States Constitutional provisions referenced herein;

e. Order injunctive relief by ordering Defendant cease and desist from continuing the conduct alleged herein;

f. Award Plaintiff and the Class and Subclass members reasonable attorneys' fees and the costs and disbursements of this suit incurred herein;

g. Award Plaintiff and Class and Subclass members pre-judgment and post-judgment interest at the highest legal rate provided by law; and

h. Order any such other and further relief the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims triable to a jury.

Respectfully submitted,

*/s/ Zachary C. Schaengold*
Zachary C. Schaengold (0090953)
Michael A. Galasso (0072470)
**ROBBINS, KELLY, PATTERSON & TUCKER**
312 Elm St., Suite 2200
Cincinnati OH  45202
Phone: (513) 721-3330
zschaengold@rkpt.com
mgalasso@rkpt.com

*Counsel for Plaintiff, the Class and Subclass*