IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| SUMMIT SUN INVESTMENTS, LLC, | : | CASE NO. 3:24-cv-00031 |
| Plaintiff, | : | (Judge Michael J. Newman) |
| | | (Magistrate Judge Caroline H. Gentry) |
| vs. | : | |
| MONTGOMERY COUNTY BOARD OF | : | **MOTION FOR SUMMARY** |
| COMMISSIONERS, | | **JUDGMENT OF DEFENDANT** |
| | : | **MONTGOMERY COUNTY, OHIO** |
| Defendant. | | **BOARD OF COUNTY** |
| | : | **COMMISSIONERS** |

Pursuant to Fed. R. Civ. P. 56(c), the undisputed facts demonstrate that Defendant

Montgomery County, Ohio Board of County Commissioners ("Montgomery County") is entitled

to judgment in its favor as a matter of law on Plaintiff Summit Sun Investments, LLC's

("Plaintiff") claims for:

> (1) declaratory and injunctive relief (Count I);
>
> (2) violations of the Fifth and Fourteenth Amendments of the
> United States Constitution and Ohio Constitution, Article I, §§16
> and 19 (Count II);
>
> (3) attorneys' fees and costs under 42 U.S.C. §1988 (Count III);
>
> (4) unjust enrichment (Count IV); and
>
> (5) theft, extortion, and coercion under R.C. 2307.60 (Count V).

February 6, 2024 Class Action Complaint and Jury Demand ("Compl.") (Doc. No. 1).

The gravamen of Plaintiff's Complaint is whether Montgomery County is legally

permitted to withhold water services from new property owners until prior outstanding water

bills on the property are paid in full. This is a question of law, which, if answered in the

affirmative, is dispositive of each of Plaintiff's claims. As shown here, Ohio law, including R.C.

6103.02 and <u>Leigh v. Dayton</u>, No. CA 11011, 1988 Ohio App. LEXIS 5372, at *6-10 (Ct. App.

Dec. 30, 1988), conclusively demonstrate that Montgomery County's practices are lawful, and

judgment should be entered in its favor on each of Plaintiff's claims.

In addition, Plaintiff's claims fail for the following reasons:

• **Counts I-V**.  Plaintiff lacks standing because it admits that it not
only paid the delinquent water bill but that it also sold the relevant
property for a profit; and it voluntarily withdrew from litigation
that would have allowed it to recover the amount paid from the
estate of the prior property owners.  July 29, 2025, Deposition
Transcript of Naomi J. Ewald as the Rule 30(b)(6) Corporate
Representative of Summit Sun Investments, LLC ("Ewald Dep.")
(Doc No. 22) 29:7-30:9, 31:24-32:2, 34:9-24; 66:18-25 (PageID#
169-70, 178); July 14, 2025 Plaintiff Summit Sun Investments,
LLC's Answers to Defendant Montgomery County Board of
County Commissioners' First Set of Requests for Admission
Directed to Plaintiff Summit Sun Investments, LLC ("Requests for
Admission") (attached as Exhibit A), No. 6.  Therefore, because
Plaintiff lacks any concrete harm, Plaintiff cannot establish Article
III standing.  <u>Thumann v. Cochran</u>, No. 1:20-cv-125, 2021 U.S.
Dist. LEXIS 63229, at *10 (S.D. Ohio Mar. 31, 2021)

• **Count II**.  Montgomery County did not commit a "taking" under
the Fifth Amendment of the United States Constitution or Article I,
Section 19 of the Ohio Constitution because it is undisputed that
Plaintiff always had access to, use of, and the ability to sell (for a
profit) the property at issue.  Ewald Dep., 62:2-6 (Doc. No. 22,
PageID# 177) ("We had access to the property . . . .  They didn't
prevent us from entering the property, but we couldn't – did not
have water to do work."); <u>id</u>. at 51:24-52:1 (PageID# 174-75)
("[Montgomery County] didn't withhold any property from us").
Therefore, no constitutional taking occurred.  <u>McCarthy v. City of
Cleveland</u>, 626 F.3d 280, 284-286 (6th Cir. 2010); <u>Oberer Land
Developers, Ltd. v. Sugarcreek Twp.</u>, No. 3:19-cv-82, 2021 U.S.
Dist. LEXIS 164383, at *19-23 (S.D. Ohio Aug. 30, 2021) (J.
Newman) aff'd by <u>Oberer Land Devs. v. Sugarcreek Twp., Ohio</u>,
No. 21-3834, 2022 U.S. App. LEXIS 15290 (6th Cir. June 1,
2022); <u>City of Norwood v. Horney</u>, 110 Ohio St. 3d 353, 2006-
Ohio-3799, ¶41, 853 N.E.2d 1115.

• **Count II**.  Montgomery County did not violate Plaintiff's due
process rights because it is undisputed that the Montgomery
County Environmental Services ("MCES") Water & Sanitary

2

Sewer Rules and Regulations ("MCES Rules") 3.2.1, 3.1.3, and 3.6.1 are unambiguous and publicly available online; several pre-purchase mechanisms were available to Plaintiff to determine whether any unpaid amounts were tied to the property; and Plaintiff failed to exercise its right to an appeal process provided for under MCES Rules 3.6.6. October 10, 2025 Declaration of Cathi Clements in Support of Motion for Summary Judgment of Defendant Montgomery County, Ohio Board of County Commissioners ("Clements Dec."), ¶¶6-8, 16 (attached as Exhibit B).[1] The MCES Rules are attached to the Clements Dec. as Exhibit 1.

• **Count IV**. There is no dispute that Montgomery County provided the water services for which it was paid by Plaintiff; therefore, there can be no finding that Montgomery County was "unjustly enriched" under Ohio law. Calderone v. Duebelt, 2025-Ohio-799, ¶ 11, 264 N.E.3d 471 (Ct. App.); KN Excavation LLC v. Rockmill Brewery LLC, 2022-Ohio-3414, ¶ 24, 196 N.E.3d 916 (Ct. App.).

• **Count V**. Plaintiff admits that Montgomery County did not (1) take any property of Plaintiff; (2) threaten it or its owners; (3) take any action to damage Plaintiff's business or its owners' personal reputations; (4) take any steps to impair Plaintiff's or its owners' credit; or (5) make any false or misleading statements to Plaintiff or its owners. Ewald Dep., 45:12-16, 51:8-52:3, 53:4-9, 54:3-19 (Doc. No. 22, PageID# 173-75). Therefore, Plaintiff cannot establish theft, extortion, or coercion, the alleged criminal acts underlying its R.C. 2307.60 claim.

Therefore, for these reasons, and those shown in the memorandum in support of this Motion, which is incorporated by reference here, the Court should grant this Motion and enter judgment in favor of Montgomery County on each of Plaintiff's claims.

---

[1] Because Plaintiff cannot prevail on its claims for violation of Section 1983, it is not entitled to reasonable attorneys' fees under 42 U.S.C. §1988. Lackey v. Stinnie, 604 U.S. 192, 202, 145 S. Ct. 659 (2025) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, 109 S. Ct. 1486 (1989)) (A "prevailing party" is the party that "prevails when a court grants enduring judicial relief that constitutes a material alteration of the legal relationship of the parties.") (internal quotations omitted). Therefore, Count III also fails as a matter of law.

Respectfully submitted,

/s/ Erin E. Rhinehart
Erin E. Rhinehart (0078298)
   Trial Attorney
Morgan K. Napier (0099190)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3714
Fax: (937) 227-3717
Email: erhinehart@ficlaw.com
      mnapier@ficlaw.com

Collin B. Showe (0093805)
Ward C. Barrentine (0074366)
Assistant Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, OH 45422
Telephone: (937) 496-7797
Fax: (937) 225-4822
Email: showec@mcohio.org
      barrentinw@mcohio.org

*Counsel for Defendant Montgomery County, Ohio Board of County Commissioners*

## <u>TABLE OF CONTENTS</u>

I.    THE MATERIAL FACTS ARE UNDISPUTED ............................................................... 1

II.    MONTGOMERY COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ............................................................................................................................ 5

     A.    Montgomery County is Legally Permitted to Withhold Water Services Until Outstanding Water Bills are Paid in Full .......................................... 6

     B.    Plaintiff's Claims Fail as a Matter of Law ............................................ 9

         1.    Plaintiff Lacks Standing ............................................................ 10

         2.    Montgomery County Did Not Violate Any Constitutional Rights ........... 11

         3.    Montgomery County Was Not Unjustly Enriched ................................. 17

         4.    Montgomery County Did Not Engage in Any Criminal Act .................... 18

         5.    Plaintiff is Not a Prevailing Party Under Section 1988 ............................ 20

III.    CONCLUSION ..................................................................................................................... 20

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT**
**MONTGOMERY COUNTY, OHIO BOARD OF COUNTY COMMISSIONERS**

I. <u>THE MATERIAL FACTS ARE UNDISPUTED</u>

Plaintiff is an Ohio corporation that purchases, renovates, and rents homes as short-term residential rentals through platforms such as Vrbo. Ewald Dep., 7:15-9:19 (Doc. No. 22, PageID# 163-64). [2] Plaintiff is owned by Ms. Naomi Ewald and her husband, Mr. Whistler. <u>Id</u>. at 4:15-23 (PageID# 163).

In January 2023, Plaintiff researched various properties for sale, including the property at 5108 Far Hills Avenue, Dayton, Ohio 45429 ("Property") − the property at issue here. <u>Id</u>. at 27:7-19 (PageID# 168). Plaintiff's pre-purchase due diligence of the Property consisted of "Googling and finding out what was available online"; "talk[ing] to the Tax Ease Ohio or the Ohio foreclosure website people"; and "just tr[ying] to get a better handle on how the [foreclosure] process worked." <u>Id</u>. (PageID# 168).

Plaintiff also retained a realtor before purchasing the Property to do an "investigation online" to identify any unpaid bills. <u>Id</u>. at 28:1-4 (PageID# 169). While Plaintiff is unaware of whether the realtor searched for unpaid water bills specifically (<u>id</u>. at 28:14-16 (PageID# 169)), the undisputed evidence shows that neither Plaintiff nor its realtor (1) called MCES, the Montgomery County department responsible for providing water and sewer services to residents, before purchasing the Property to learn if there were any unpaid water bills (Requests for Admission, No. 7); (2) requested a meter reading on the Property before the

---

[2] The defined terms in the Motion have the same meaning in this Memorandum in Support. All emphasis is added unless otherwise noted.

purchase (Clements Dec., ¶8; R.C. 6103.02(G)(4)); or (3) conducted any other pre-purchase due diligence of the water services at the Property (Clements Dec., ¶8; Ewald Dep., 28:1-16 (Doc. No. 22, PageID# 169); July 22, 2025 Plaintiff Summit Sun Investments, LLC's Answers and Responses to Defendant Montgomery County Board of County Commissioners' First Set of Interrogatories and Requests for Production of Documents Directed to Plaintiff Summit Sun Investments, Inc. ("Interrogatory Responses") (attached as Exhibit C), No. 2).

On January 24, 2023, Plaintiff successfully placed (and later won) a bid on the Property via a foreclosure website. Ewald Dep., Ex. F-A (Apr. 6, 2023 Affidavit of Naomi Ewald), ¶3 (Doc. No. 22, PageID# 288); Ewald Dep., 19:22-23, 24:3-5, 24:23-25:14 (Doc. No. 22, PageID# 166, 168). At all relevant times, Plaintiff knew that all property purchased through foreclosure is sold "as is" (id. at 60:1-3 (PageID# 177)), and that there is always risk associated with purchasing a property – especially a property sold through foreclosure. Id. at 56:6-11, 59:24-25 (PageID# 176).

In March 2023, after purchasing the Property and while preparing to take possession, Plaintiff contacted MCES to transfer services to its name. Interrogatory Responses, No. 3. It was at this time that Plaintiff learned that there was an unpaid water bill for $5,750.65 associated with the Property, and that water services would not be restored until payment was received. Id. at Ex. F-A, ¶8 (Doc. No. 22, PageID# 288).

MCES explained that, pursuant to the MCES Rules, water services are not provided until all outstanding water bills associated with the property are paid in full. Id.; Ewald Dep., 41:3-6 (Doc. No. 22, PageID# 172); July 28, 2025, Deposition Transcript of Cathi E.

Clements as a Rule 30(b)(6) Corporate Representative of MCES ("Clements Dep.") (Doc. No. 23), 53:5-11 (PageID# 308). Specifically, MCES Rule 3.2.1 provides, in relevant part:

> "**Property owners shall be held responsible for services provided to their premises.** Property owners are responsible for any outstanding charges not paid by their tenants. The **current property owner will be held responsible** for all delinquent charges, **even if they were not the owner of the property when the charges were accrued**. Delinquency shall be just-cause for terminating service(s)."

Indeed, **several** MCES Rules clearly and unambiguously explain that, when there is a delinquent water bill associated with a property, "[p]rior unpaid balances on the parcel will be due **before** service can be transferred," and that "[s]ervice **shall not be restored** [at the property] until all delinquencies and charges associated with the parcel are paid." MCES Rules 3.1.3, 3.6.1 (Doc. No. 1-2, PageID# 36, 41-42; Clements Dec., Ex. 1). It is undisputed that, at all relevant times, the MCES Rules were publicly available online. Compl., ¶25 (Doc. No. 1, PageID# 5); Clements Dec., ¶6. Notwithstanding, Ms. Ewald testified that she did not review the MCES Rules before purchasing the Property. Ewald Dep., 42:10-20 (Doc. No. 22, PageID# 172).

After purchasing the Property, and before filing this lawsuit, Plaintiff failed to exhaust the dispute resolution and appeals process available through MCES. Ewald Dep., 44:17-45:3 (Doc. No. 22, PageID# 173); Clements Dec., ¶16. Pursuant to MCES Rule 3.6.6, "MCES will attempt to resolve all customer complaints and disputes. If resolution is not agreed on, **customers may request a hearing** with the MCES Appeals Board." MCES Rule 3.6.6 (Doc. No. 1-2, PageID# 42; Clements Dec., Ex. 1); Clements Dec., ¶¶17-19; Clements Dep., 59:18-23 (Doc. No. 23, PageID# 309).

Notably, before filing this putative class action, Plaintiff appeared as a third-party plaintiff in the matter captioned <u>Tax Ease Ohio IV, LLC v. Unknown Successor Trustee of Louis</u>

E. Turner, Trustee of the Unknown Trust, et al., Case No. 2022 CV 01252 (Montgomery C.P.) to recover unclaimed funds from the prior owners' estate to apply to the delinquent water bill. Ewald Dep., Ex. F (Doc. No. 22, PageID# 283-89); Requests for Admission, No. 3. However, **Plaintiff withdrew its motion and voluntarily chose not to pursue funds from the prior owners' estate** to pay the bill or to recover amounts paid out of pocket by Plaintiff to cover the delinquent water bill. Ewald Dep., Ex. G (Doc. No. 22, PageID# 290-92); id. at 66:11-25 (Doc. No. 22, PageID# 178) (admitting that it withdrew a motion seeking reimbursement from the former owner's estate and chose not to pursue the matter any further); Requests for Admission, No. 6. See also Tax Ease Ohio IV, May 12, 2023 Entry and Order Granting Third-Party Purchaser's Motion to Withdraw Motion for Partial Distribution of Excess Funds (Ewald Dep., Ex. G (Doc No. 22, PageID# 290-92)).

Ultimately, Plaintiff paid the delinquent water bill. Ewald Dep., 34:23-24 (Doc. No. 22, PageID# 170); Clements Dec., ¶15. Water was restored to the Property and Plaintiff completed its renovation of the Property. Ewald Dep. at 35:7-10 (Doc. No. 22, PageID# 170). In August 2023, Plaintiff sold the Property for $440,000, earning approximately $50,000 in profit. Id. at 31:19-32:2 (PageID# 169-70). Indeed, Plaintiff admits that no one from Montgomery County:

- threatened Plaintiff or its owners (id. at 45:12-16, 53:4-9 (PageID# 173, 175));

- took any action to damage Plaintiff's business or its owners' personal reputations (id. at 53:10-16 (PageID# 175));

- took any steps to impair Plaintiff's or its owners' credit (id. at 53:17-22 (PageID# 175));

- made any false or misleading statement to Plaintiff or its owners (id. at 51:4-18 (PageID# 174)); or

- deprived Plaintiff of the ability to access or use the Property, nor did Montgomery County withhold any property from Plaintiff. <u>Id</u>. at 61:22-62:11, 51:24-52:3 (PageID# 174-75, 177).

Therefore, Plaintiff's claims cannot survive.

II.        MONTGOMERY COUNTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate when the "evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." <u>Oberer Land Developers, Ltd. v. Sugarcreek Twp.</u>, No. 3:19-cv-82, 2021 U.S. Dist. LEXIS 164383, at *8 (S.D. Ohio Aug. 30, 2021) (J. Newman) (citations omitted) (aff'd by <u>Oberer Land Devs. v. Sugarcreek Twp., Ohio</u>, No. 21-3834, 2022 U.S. App. LEXIS 15290 (6th Cir. June 1, 2022)). Plaintiff cannot "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an **<u>affirmative showing</u> <u>with proper evidence</u>**" to survive summary judgment. <u>Id</u>. at *9 (citation and internal quotations omitted). "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." <u>Id</u>. (citation omitted).

Here, there is no genuine issue of material fact that (1) the MCES Rules are valid and enforceable under Ohio law; (2) Plaintiff lacks standing to bring its claims; (3) Montgomery County did not violate Plaintiff's federal or state constitutional rights; (4) Montgomery County did not engage in theft, extortion, or coercion; and (5) Plaintiff is not a "prevailing party" entitled to attorneys' fees and costs.

A.    Montgomery County is Legally Permitted to Withhold Water Services
      Until Outstanding Water Bills are Paid in Full

R.C. 6103.02(A) permits Ohio's county commissioners to "maintain" and "operate any public water supply."  In doing so, counties are granted discretion to "adopt, publish, administer, and enforce rules" for the "use of county-owned or county-operated public water supply facilities."  R.C. 6103.02(C).  Relevant here, R.C. 6103.02(C) provides that:

> "The board may adopt, publish, administer, and enforce **rules for the construction, maintenance, protection, and use of county-owned or county-operated public water supply facilities** outside municipal corporations and of public water supply facilities within municipal corporations that are owned or operated by the county or that are supplied with water from water supply facilities owned or operated by the county, **including, but not limited to, rules for** the establishment and use of any connections, **the termination in accordance with reasonable procedures of water service for nonpayment of county water rates and charges**, and the establishment and use of security deposits to the extent considered necessary to ensure the payment of county water rates and charges. The rules shall not be inconsistent with the laws of the state or any applicable rules of the director of environmental protection."

To collect amounts owed, the Ohio General Assembly provides counties with four options:

> "(G) When any rates or charges are not paid when due, **the board may do any or all of the following**:
>
> (1) Certify the unpaid rates or charges, together with any penalties, to the county auditor . . . .  The certified amount shall be a lien on the property from the date placed on the real property tax list . . .[;]
>
> (2) Collect unpaid rates or charges, together with any penalties, by action at law in the name of the county from **an owner**, tenant, or other person or public agency that is liable for the payment of the rates or charges;
>
> (3) **Terminate**, in accordance with established rules, **the water service to the particular property unless and until the unpaid rates or charges, together with any penalties, are paid in full**;

6

> (4) Apply, to the extent required, any security deposit made in accordance with established rules to the payment of the unpaid rates and charges, together with any penalties, for water service to the particular property."

R.C. 6103.02(G)(1)-(4).

In addition to R.C. 6103.02(G), longstanding Ohio law supports Montgomery County's practice of terminating water service until delinquent bills associated with the property are paid, even if the charges were incurred by the previous property owner. <u>Leigh v. Dayton</u>, No. CA 11011, 1988 Ohio App. LEXIS 5372, at *6-10 (Ct. App. Dec. 30, 1988).

In <u>Leigh</u>, the Second District Court of Appeals affirmed the trial court's grant of summary judgment in favor of the City of Dayton ("City") and found that the City's public ordinance that permitted it to refuse to provide water to a property on account of the unpaid bills of the previous owner was lawful. <u>Id.</u> at *9 ("While a justiciable controversy was evident, no genuine issue of material fact was before the trial court regarding the City of Dayton's procedure in refusing water services to [the plaintiff's] property, and **the procedure was lawful**. The trial court properly granted summary judgment in favor of the City of Dayton, and sufficiently declared the rights of the parties.").

The City's ordinance provided that:

> "(A) **Where a water bill has not been paid** as provided by the rules and regulations of the Department of Water and the property shutoff notice has been delivered, **the water shall thereafter be shut off in accordance with these rules and regulations**, **and it shall not thereafter be turned on again until all charges due and payable, including advance charges, if any, are fully paid**.

> (B) **This section shall apply whether or not there has been in the meantime a change of ownership or possession** of the premises supplied, except as provided in §§ 50.15 and 50.16."

Id. at *5 (quoting R.C.G.O. Section 50.13). The plaintiff argued (id.) that the City's ordinance was unlawful under the Supreme Court of Ohio's decision in W. Reserve Steel Co. v Vill. of Cuyahoga Heights, 118 Ohio St. 544, 161 N.E. 920 (1928) – the same case on which Plaintiff relies here.[3]

The appellate court disagreed and distinguished Western Reserve because the purchaser in that case "had no public notice that the water bill incurred by the prior owner had to be paid by the purchaser before water would be available." Leigh, 1988 Ohio App. LEXIS 5372, at *6-8 (reasoning that the purchaser in Western Reserve had no public notice because the obligation to pay prior delinquent water bills was founded in contract and the purchaser was not a party to this contract; "[t]he City of Dayton, on the other hand, provides public notice of the consequences of purchasing property subject to unpaid water charges in R.C.G.O Section 50.13 . . . . Being distinguishable, Western Reserve does not make R.C.G.O. Section 50.13 unlawful."). The same result is appropriate here.

While the appellate court in Leigh reversed the trial court's grant of summary judgment in favor of the **county**, Leigh was decided under a **prior version** of R.C. 6103.02, which did **not** provide for discontinuation of water service by the county when water service charges were not paid. Id. at *11-12 ("[The prior version of] R.C. 6103.02 does not provide for discontinuation of water service by Montgomery County when water service charges are not paid. [The plaintiff] does not raise this argument in his brief but does allege in his complaint and affidavit . . . that Montgomery County's practice of refusing water to his property for delinquent

---

[3] May 28, 2024 Plaintiff's Opposition to Defendants' Motion to Dismiss (Doc. No. 8), PageID# 102-04 (relying solely on Western Reserve in support of its claims here).

water services incurred by prior tenants and/or owners is contrary to [the prior version of] R.C. 6103.02. We agree that such a practice would be unlawful.") And summary judgment was reversed because conflicting affidavits created a genuine issue of material fact as to whether the county actually refused to provide water to the plaintiff's property for delinquent water service charges incurred by the previous owners. Id. at *12-13.

Importantly, however, the appellate court's analysis of the City's ordinance and Western Reserve shows that, **had the current version of R.C. 6103.02 applied, Montgomery County would have been permitted to withhold water services until the delinquent bills were paid**. Leigh is dispositive here and supports judgment in favor of Montgomery County.

Here, as in Leigh and like the City's ordinance, R.C. 6103.02(G)(3) and the MCES Rules are publicly available; and, consistent with the applicable version of R.C. 6103.02(G)(3), provide that Montgomery County may refuse to provide water to a property on account of the unpaid bills of the previous owner. Therefore, there is no genuine issue of material fact that Montgomery County's practice of terminating water services until delinquent bills are paid is valid and enforceable under Ohio law. This finding is dispositive of each claim alleged by Plaintiff, and the Court may enter judgment in favor of Montgomery County on this basis alone.

B.     Plaintiff's Claims Fail as a Matter of Law

Even assuming, for argument's sake, that Montgomery County's practice is not lawful, judgment in favor of Montgomery County is still appropriate for the following separate and independent reasons: (1) Plaintiff lacks standing to bring its claims; (2) Montgomery County did not violate Plaintiff's federal or state constitutional rights; (3) Montgomery County was not

9

unjustly enriched since it was paid for services rendered; (4) Montgomery County did not commit any criminal act; and (5) Plaintiff is not a "prevailing party" under Section 1988.

1.     Plaintiff Lacks Standing

"Article III of the U.S. Constitution restricts the jurisdiction of federal courts to actual 'cases' and 'controversies.'" Doe v. Bethel Local Sch. Dist. Bd. of Educ., No. 23-3740, 2025 U.S. App. LEXIS 22140, at *8 (6th Cir. 2025) (citations omitted).  For Plaintiff to have standing, it "(1) must have suffered some **actual or threatened injury** due to the alleged illegal conduct (the 'injury in fact element'); (2) the injury must be fairly traceable to the challenged action (the 'causation element'); and (3) there must be a substantial likelihood that the relief requested will redress or prevent [plaintiff]'s injury (the 'redressability element.')" Thumann v. Cochran, No. 1:20-cv-125, 2021 U.S. Dist. LEXIS 63229, at *10 (S.D. Ohio Mar. 31, 2021) (emphasis in the original) (citation omitted).

This requires the plaintiff to have a "personal stake" in the outcome, and if no personal stake exists, then the matter must be dismissed for mootness.  Doe at *8 (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72, 133 S. Ct. 1523 (2013)).  The harm must be concrete even in the context of a "statutory violation." Thumann at *11.

Here, Plaintiff's lack of concrete harm is dispositive.  Plaintiff admits that it had access to and could use the Property.[4]  Plaintiff admits that it sold the Property for a profit that

---

[4] Ewald Dep., 62:2-6 (Doc. No. 22, PageID# 177) ("We had access to the property, but we did not have access to water.  So we could get into the property.  They didn't prevent us from entering the property, but we couldn't – did not have water to do work."); id. at 51:24-52:3 (PageID# 174-75) (Montgomery County "didn't withhold any property from us, I don't believe.").

more than covers the amount of the delinquent water bill.[5]  No order from this Court that

"enjoins" Montgomery County from continuing to enforce the MCES Rules will "make [any]

difference to the legal interests of" Plaintiff.  Doe at *9 (quoting Ford v. Wilder, 469 F.3d 500,

504 (6th Cir. 2006)).  Therefore, Plaintiff lacks standing to pursue its claims, and judgment

should be entered in favor of Montgomery County on each claim alleged.

        2.      Montgomery County Did Not Violate Any Constitutional Rights

Plaintiff relies upon 42 U.S.C. §1983 to allege that its constitutional rights were

deprived because Montgomery County purportedly "refus[ed] to allow [Plaintiff] access and use

of their property until they pay off others' debts"; and "[b]y refusing to allow new property

owners the ability to challenge the required payment of others' debts," Montgomery County

purportedly took the Property without due process.  Compl., ¶¶88-89 (Doc. No. 1, PageID# 15).

As shown below, it is undisputed that no constitutional taking, or due process violation occurred

here.[6]

        a.      No Federal or State Taking Occurred

The Fifth Amendment does not create a property interest.  Snyder v. Vill. of

Luckey, No. 3:22 CV 2282, 2024 U.S. Dist. LEXIS 24483, at *16 (N.D. Ohio Feb. 12, 2024).

The Fifth Amendment prohibits the government, including state governments, from taking

---

[5] Id. at 32:2 (PageID# 170)

[6] To the extent that Plaintiff seeks an order that Montgomery County "conform with state law," or to recover
damages for the purported violations of the Ohio Constitution, pursuant to 42. U.S.C. § 1983 (Compl., ¶¶82-96
(Doc. No. 1, PageID# 14-15) such relief is outside the jurisdiction of this Court.  Bojicic v. DeWine, 569 F. Supp. 3d
669, 693 (N.D. Ohio 2021) (collecting cases) (explaining that Section 1983 does not provide a remedy for violations
of **state** law and that it is "limited" to federal constitutional violations only); Gammarino v. Sycamore Twp., No. 24-
3149, 2025 U.S. App. LEXIS 5181, at *14-15 (6th Cir. Mar. 3, 2025) (explaining that the Ohio Constitution does
not "provide for a civil damage remedy" and no statute analogous to 42 U.S.C. §1983 exists under Ohio law;
therefore, a plaintiff cannot pursue money damages for alleged violations of the Ohio Constitution).

private property for public use "without just compensation." McCarthy v. City of Cleveland, 626 F.3d 280, 283 (6th Cir. 2010). See City of Norwood v. Horney, 110 Ohio St. 3d 353, 2006-Ohio-3799, ¶ 41, 853 N.E.2d 1115 (2006) (Article I, Section 19 of the Ohio Constitution "requires that the taking be necessary for the common welfare and, to insure that principle of natural justice, that the persons deprived of their property will be compensated . . .") (citations and internal quotations omitted).

A constitutional taking may occur in one of two ways: (1) per se taking; or (2) regulatory taking. Oberer, 2021 U.S. Dist. LEXIS 164383, at *19 (citations omitted). "A per se taking occurs when the government physically seizes property or directly appropriates it." Id. (citation omitted). "A regulatory taking results when government regulation of private property becomes so onerous that it amounts to a taking." Id. (citation omitted). Here, as shown below, neither occurred as a matter of law.

### 1) No Per Se Taking Occurred

As a threshold matter, Plaintiff admits that Montgomery County never interfered with its ability to access and use the Property, nor did Montgomery County withhold any portion of the Property from Plaintiff. Ewald Dep., 61:22-62:11 (Doc No. 22, PageID# 177) ("Q. Did [MCES] refuse to give you full and complete access, including with water … until you'd paid them … the water bill amount [the prior owner] had accrued? … A. **We had access to the property** but we did not have access to water. So **we could get into the property**. [MCES] didn't prevent us from entering the property, but we couldn't – did not have water to do work."); id. at 52:2-3 (PageID# 175) (MCES "didn't withhold any property from us, I don't believe."). Therefore, no per se taking of the Property occurred.

12

In addition, Plaintiff's payment of the delinquent water bill is not a per se taking. A statute can effect a per se taking of funds **only** when it "operated to seize a sum of money from a **specific fund**," **and** it was not an imposition of "an obligation on a party to pay money on the happening of a contingency." McCarthy, 626 F.3d at 284-85. The Sixth Circuit explained that: "**[T]he Takings Clause is not an appropriate vehicle** to challenge the power of [a legislature] to impose a mere monetary obligation **without regard to an identifiable property interest**. **Because the challenged ordinance does not seize or otherwise impair an identifiable fund of money, Plaintiffs have failed to plead a cause of action under the Takings Clause**." Id. at 286 (internal quotations and citation omitted; alteration in original) (affirming the district court's dismissal of Plaintiffs' Section 1983 claim).

For example, state statutes that permitted (1) county clerk offices to "keep all interest earned on funds paid into court in interpleader actions"; and (2) "interest earned by lawyers' trust accounts [to] be turned over to the states' legal aid charities" were found to be constitutional takings. Id. at 284 (citations omitted; explaining that, "[i]n each case, the state law at issue operated to seize a sum of money from a specific fund").

Conversely, in McCarthy, **no** per se taking was found because the Cleveland traffic ordinance at issue there "merely impose[d] an obligation on a party to pay money on the happening of a contingency [i.e., violation of a traffic camera citation]. Cleveland did not seize funds from Plaintiffs' bank accounts." Id. at 284-85.

Here, like McCarthy, the MCES Rules impose an obligation on the property owner to pay money "on the happening of a contingency," i.e., Montgomery County providing water services to the Property. Plaintiff admits that Montgomery County never seized Plaintiff's

13

assets or bank accounts, nor that Montgomery County ordered certain funds to be seized. Instead, acting in accordance with Ohio law, Montgomery County required payment of a delinquent water bill for services rendered before resuming water services. The fees received by Montgomery County were used to satisfy the Property's debt incurred as a result of prior water services provided to the Property. Therefore, no per se taking occurred.

2)     <u>No Regulatory Taking Occurred</u>

A regulatory taking occurs if the regulation causes deprivation of "*all* economically beneficial use[,]" or if the regulation goes so far as to be burdensome. <u>Oberer</u>, 2021 U.S. Dist. LEXIS 164383, at *19-20 (quoting <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1019, 112 S. Ct. 2886 (1992) (emphasis in the original); <u>Murr v. Wisconsin</u>, 582 U.S. 383, 137 S. Ct. 1933, 1942 (2017)). Courts weigh three factors: "(1) the economic impact of the regulation on the claimant; (2) the extent of the regulation's interference with investment-backed expectations; and (3) the character of the government action." <u>Id</u>. at *20 (quoting <u>Penn Cent. Transp. Co., v. N.Y.C.</u>, 438 U.S. 104, 124, 98 S. Ct. 2646 (1978)) (internal quotations omitted).

Here, no regulatory taking occurred. Plaintiff admits that it: (1) had access to and was able to use the Property (Ewald Dep., 61:22-62:11 (Doc. No. 22, PageID# 177)); (2) was able to complete renovations at the Property (<u>id</u>. at 29:5-30:9, 36:17-23 (PageID# 169, 171)); and (3) sold the Property for a profit (<u>id</u>. at 32:2 (PageID# 170)). There is no evidence that Plaintiff was deprived of **<u>any</u>** economically beneficial use, let alone **<u>all</u>** of it as required under the law.

In addition, as shown above, there is no evidence that Plaintiff's funds used to pay the delinquent water bill were constitutionally "taken." Plaintiff does not dispute that the water

14

bill was for services actually provided to the Property. Instead, Plaintiff disputes that **it** had to pay for the services provided. Therefore, no regulatory taking occurred.

b. <u>Plaintiff's Due Process Rights Were Not Violated</u>

"The Fourteenth Amendment protects against the deprivation of 'life, liberty, or property, without due process of law.'" <u>Golf Vill. North, LLC v. City of Powell</u>, 42 F.4th 593, 598 (6th Cir. 2022) (quoting U.S. Const. amend. XIV, §1). <u>See also</u> <u>Oliver v. Etna Twp.</u>, 731 F. Supp. 3d 901, 925 (6th Cir. 2024) (citing <u>Ohio v. Aalim</u>, 150 Ohio St. 3d 489, 2017-Ohio-2956, 83 N.E.3d 883, 890 (2017)) (the Ohio Supreme Court treats due process claims arising under Article I, Section 16 of the Ohio Constitution "as equivalent to their federal counterpart."). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." <u>Lassiter v. Dep't of Soc. Servs.</u>, 452 U.S. 18, 24, 101 S. Ct. 2153 (1981) (citation omitted). Application of the Due Process Clause is "an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." <u>Id</u>. at 24-25.

Challenges to due process can come in the form of procedural or substantive due process claims. <u>Golf Vill.</u> at 598.[7] Procedural due process ensures that the government provides "fair procedure" when depriving one of their property interest. <u>Id</u>. (citation omitted). This requires the plaintiff to demonstrate that "(1) it had a constitutionally protected interest; (2) it

---

[7] To the extent that Plaintiff argues a substantive due process violation, Plaintiff cannot prevail because the "taking" of the funds used to pay the delinquent water bill is addressed through Plaintiff's alleged violations of the Fifth Amendment. <u>Snyder</u>, 2024 U.S. Dist. LEXIS 24483, at *25 (quoting <u>McClafferty v. Portage Cty. Bd. of Elections</u>, 661 F. Supp. 2d 826, 834 (N.D. Ohio 2009)) ("[T]he Supreme Court has held that the concept of substantive due process has no place when another provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff."). Therefore, no substantive due process claim can stand here, and the remainder of this Section will focus on procedural due process.

was deprived of that interest; and (3) the state did not afford it adequate procedures." Id. (citing Paterek v. Vill. of Armada, 801 F.3d 630, 649 (6th Cir. 2015)).  "[T]he hallmark of due process is that a deprivation of property interest must be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cahoo v. SAS Analytics, Inc., 912 F.3d 887, 901 (6th Cir. 2019) (citation and internal quotations omitted).  Courts consider three factors to determine whether sufficient process was received:

> "**First**, the private interest that will be affected by the official action; **second**, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and **finally**, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Id. at 902 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893 (1976)).

Here, as shown above, Plaintiff was not deprived of any protected interest because (1) Plaintiff was always able to use and access the Property, and (2) the funds used to satisfy the delinquent water bill were owed to Montgomery County for water services previously provided to the Property.

In addition, even if Plaintiff established a protected interest, applying the Mathews factors, Plaintiff was afforded adequate procedure.  First, no private interest was implicated by Plaintiff's payment of the delinquent water bill; the property owner was responsible for paying for services pursuant to the publicly available MCES Rules.  Second, Plaintiff was on notice that delinquent water bills run with the Property, and Plaintiff could (but chose not to) call MCES to inquire about the status of any unpaid bills or request a meter read (R.C. 6103.02(G)(4)).  Third, Plaintiff could (but chose not to) seek relief from the unpaid utility bill by pursuing an administrative appeal under the MCES Rules.

16

Finally, given Montgomery County's interest in collecting monies owed to it for services rendered, including water services, there is no more that Montgomery County could do if Plaintiff is not inclined to avail itself of any opportunity made available to it to learn of the delinquent water bills before purchase or to contest payment via the administrative remedies available to it. Therefore, there is no genuine issue of material fact that Plaintiff suffered no state or federal constitutional violation.

3.    Montgomery County Was Not Unjustly Enriched

In Ohio, the plaintiff must demonstrate the following to establish an unjust enrichment claim: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." Lone Star Equities, Inc. v. Dimitrouleas, 2015-Ohio-2294, ¶¶ 70-71, 34 N.E.3d 936 (Ct. App.) (citation omitted) ("In Ohio, unjust enrichment is a claim under quasi-contract law against a person in receipt of benefits that he is not justly and equitably entitled to retain."). "The purpose of an unjust enrichment claim is **not** to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he conferred on the defendant **when it would be unjust for the defendant to retain the benefit**." KN Excavation LLC v. Rockmill Brewery LLC, 2022-Ohio-3414, ¶ 24, 196 N.E.3d 916 (Ct. App.) (citing Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791). Therefore, where payment is made for services rendered, an unjust enrichment claim fails because it cannot be said to be "unjust" to retain such payment.

Here, there is no dispute that Montgomery County provided the water services for which it was paid by Plaintiff. Compl., ¶¶18-20 (Doc. No. 1, PageID# 4); Clements Decl., ¶¶9, 15. Therefore, Montgomery County was not "unjustly enriched." Indeed, if any benefit was

17

conferred by Plaintiff's payment, the prior owners of the Property who incurred the debt were the beneficiaries of that benefit – not Montgomery County. See e.g., Calderone v. Duebelt, 2025-Ohio-799, ¶ 11, 264 N.E.3d 471 (Ct. App.) (finding that the plaintiff's payoff of a bank loan that extinguished the defendant's debt to the bank was a benefit to the defendant – not to the bank). A claim for unjust enrichment cannot be established here.

### 4.   Montgomery County Did Not Engage in Any Criminal Act

R.C. 2307.60 permits anyone injured by a criminal act to recover civil damages. Plaintiff alleges criminal violations of theft (R.C. 2913.02), extortion (R.C. 2905.11(B)(5))[8], and coercion (R.C. 2905.12(A)(3))[9].

A criminal claim for *theft* arises when a person, "with purpose to deprive the owner of property or services," "knowingly obtain[s] or exert[s] control over either the property or services" (1) "without consent of the owner"; (2) in excess of the scope of express or implied consent; or (3) through deception, threat, or intimidation. R.C. 2913.02(A).

A criminal claim for *extortion* arises when a person "obtain[s] any valuable thing or valuable benefit or induce[s] another to do an unlawful act" by "[e]xpos[ing] or threaten[ing] to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage the person's personal or business repute, or to impair any person's credit." R.C. 2905.11(B)(5).

---

[8] Plaintiff erroneously cites to R.C. 2905.11(A)(5) in support of its allegation of extortion (Compl., ¶114 (Doc. No. 1, PageID# 18)), which provides a definition for "private images" under Ohio's sexual extortion statute. R.C. 2905.11(A)(5). Montgomery County assumes Plaintiff is referring to R.C. 2905.11(B)(5), and responds accordingly.

[9] Plaintiff did not include a citation for its allegation of coercion under the Ohio Revised Code. Compl., ¶115 (Doc. No. 1, PageID# 18). Plaintiff's quote may be attributed to R.C. 2905.12(A)(3), and Montgomery County's response will reference this statute in its response.

A criminal claim for *coercion* arises when a person "with purpose to coerce another into taking or refraining from action concerning which the other person has a legal freedom of choice" by "[e]xpos[ing] or threaten[ing] to expose any matter tending to subject any person to hatred, contempt, or ridicule, to damage any person's personal or business repute, or to impair any person's credit." R.C. 2905.12(A)(3).

Here, the undisputed evidence shows that **none** of these alleged criminal acts is supported here. Montgomery County **never** deprived Plaintiff of its right to use and access the Property. Montgomery County **never** forced Plaintiff to pay the delinquent water bill through deception, intimidation, threats, or otherwise.

Indeed, Plaintiff's admissions belie any of the alleged criminal acts:

- **Montgomery County did not engage in any criminal activity.** Ewald Dep., 53:23-54:2 (Doc. No. 22, PageID# 175) ("Q. And who, if anyone, at Environmental Services, do you believe engaged in any kind of criminal activity? A. I don't know if they were guilty of criminal activity, but they certainly could have informed us of an appeal process."); id. at 54:18-19 (PageID# 175) ("We're not trying to ascertain that they were criminals."); id. at 55:9-12 (PageID# 175) ("We don't believe that … they committed a crime necessarily. They just held us between a rock and a hard place.");

- **Montgomery County did not threaten Plaintiff or its owners.** Id. at 45:12-16 (PageID# 173) ("Q. Did anyone from Montgomery County … threaten you in order to make you pay this bill? A. No. They said they wouldn't turn the water on until we paid the bill."); id. at 53:4-8 (PageID# 175) ("Q… was there anything that [Montgomery County] or any of its employees exposed or threatened to expose with regard to you, your husband, or Summit Sun that would have subjected any of you to hatred, contempt, or ridicule? A. No. I mean I don't believe so.").

- **Montgomery County did not damage Plaintiff's or its owners' personal or business reputations.** Id. at 53:10-16 (PageID# 175); and

- **Plaintiff did not "think [Montgomery County] would try to attack our credit."** Id. at 53:17-22 (PageID# 175).

Therefore, Plaintiff's attempt to recover civil damages for alleged criminal acts fails.

19

5. <u>Plaintiff is Not a Prevailing Party Under Section 1988</u>

The prevailing party to any action to enforce a Section 1983 violation may recover its reasonable attorney's fees as part of its costs. 42 U.S.C. §1988. A "prevailing party" is the party that "'prevails' when a court grants enduring judicial relief that constitutes a 'material alteration of the legal relationship of the parties.'" <u>Lackey v. Stinnie</u>, 604 U.S. 192, 202, 145 S. Ct. 659 (2025) (quoting <u>Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,</u> 489 U.S. 782, 792-93, 109 S. Ct. 1486 (1989)). Here, as shown above, Plaintiff cannot prevail on any claim alleged. And, even if it could, no order from this Court will materially alter the relationship between Montgomery County and Plaintiff because Plaintiff already paid the delinquent water bill and sold the Property for a profit. Therefore, Plaintiff is not a prevailing party and cannot recover its fees under 42 U.S.C. §1988.

III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this Motion and enter judgment in favor of Montgomery County on all claims alleged by Plaintiff.

20

Respectfully submitted,

/s/ Erin E. Rhinehart
Erin E. Rhinehart (0078298)
   Trial Attorney
Morgan K. Napier (0099190)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3714
Fax: (937) 227-3717
Email: erhinehart@ficlaw.com
      mnapier@ficlaw.com

Collin B. Showe (0093805)
Ward C. Barrentine (0074366)
Assistant Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, OH 45422
Telephone: (937) 496-7797
Fax: (937) 225-4822
Email: showec@mcohio.org
      barrentinw@mcohio.org

*Counsel for Defendant Montgomery County,
Ohio Board of County Commissioners*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 31st day of October, 2025, I electronically filed the foregoing

Motion for Summary Judgment of Defendant Montgomery County, Ohio Board of County

Commissioners with the Clerk of Courts using the CM/ECF system, which will send notification

of such filing to CM/ECF participants:

Zachary C. Schaengold, Esq.
Michael A. Galasso, Esq.
ROBBINS, KELLY, PATTERSON & TUCKER
312 Elm Street, Suite 2200
Cincinnati, OH  45202
zschaengold@rkpt.com
mgalasso@rkpt.com

*Counsel for Plaintiff*

/s/ Erin E. Rhinehart
Erin E. Rhinehart

4923-0290-1105.1